IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 00-30046 |
| ) | |
| STEVEN WAYNE MAISENBACHER, ) | |
| ) | |
| Defendant. ) | |

OPINION

RICHARD MILLS, United States District Judge:

Defendant Steven Wayne Maisenbacher has filed an Emergency Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on "extraordinary and compelling reasons" associated with the COVID-19 pandemic.

The Defendant states he suffers from medical conditions that place him at grave risk for severe illness or death if he contracts COVID-19, including diabetes, hypertension and Chronic Obstructive Pulmonary Disease ("COPD") and is particularly susceptible to contracting the disease while housed in a crowded facility with limited ability to take certain self-protective measures. He asks the Court to reduce his sentence to time served or allow the remainder of his sentence to be served in home confinement.

1

The Government acknowledges the Defendant has serious health concerns but asks the Court to deny the motion in order to protect the community.

## I. BACKGROUND

On September 24, 2001, following guilty pleas to bank robbery, brandishing a firearm during the bank robbery and possession of a firearm by a convicted felon, the Defendant was sentenced to a total term of 324 months' imprisonment followed by five years' supervised release. His current projected release date is August 30, 2023.

The Defendant is 60 years old and is serving his sentence at Talladega FCI. He has been in custody in connection with the present offenses since June 21, 2000, or almost 246 months. He has also satisfied the monetary judgment in this case.

According to the Bureau of Prisons ("BOP") website, 154 federal inmates and two BOP staff members have died of COVID-19. www.bop.gov/coronavirus (last accessed December 11, 2020). There are 6,882 federal inmates and 1,743 BOP staff who are currently positive for COVID-19. *Id*. Currently, 23,556 inmates and 2,199 staff have recovered. *Id*. There are 124,553 inmates at BOP-managed institutions, along with approximately 36,000 BOP staff. *Id*.

Talladega FCI has 36 inmates and 25 staff members who are currently positive for COVID-19. *Id*. There has been one inmate death at Talladega due to COVID-19. *Id*. The website reports that 144 inmates and 9 staff members at Talladega have

recovered. *Id*. Talladega FCI has 900 inmates, including 89 at the Camp. www.bop.gov/locations/institutions/mil (last accessed December 11, 2020).

## II. DISCUSSION

### (A)

Under the First Step Act signed into law on December 21, 2018, defendants are now authorized to file motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A).

The Defendant's motion represents that he made a request for compassionate release in writing to the Warden of his facility more than 30 days before filing his motion. The Warden denied the Defendant's request for compassionate release on or about May 15, 2020. Accordingly, the Defendant has met the statutory exhaustion requirement and his motion is ripe for review.

The Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission."

18 U.S.C. § 3582(c)(1)(A). The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release but courts have turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted). The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act. *See* U.S.S.G. § 1B1.13. The policy statement provides examples of "extraordinary and compelling reasons" in the application notes. These examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1 (A)-(C).

The commentary also includes a fifth catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons. The policy statement was last updated in November 2018 before the First Step Act was passed.

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement. The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." There have been calls from legal experts for the Attorney General to expand the home confinement program even further. Moreover, multiple United States Senators have voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

(B)

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes. "The spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenges for the nation and poses a serious issue for prisons." *United States v. Coles*, 2020

WL 1976296, *6 (C.D. Ill. Apr. 24, 2020). Over 150 people in BOP custody have died from COVID-19. However, "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

Here, the Defendant's health problems include hypoglycemia, Type 2 diabetes and hepatitis C. Since he has been incarcerated, the Defendant has also been diagnosed with COPD and hypertension. He is prescribed a Mometasone Furoate 220 MCG/Inh inhaler to take twice per day and an Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT to take as needed up to every four hours to treat his COPD. The Defendant has been diagnosed with Type 2 diabetes since he was a child and is prescribed two 1000 mg tabs of MetFORMIN tablets daily.

The Defendant states that his vulnerability to COVID-19 is an extraordinary and compelling reason for an immediate reduction to time served. Because of his

age and medical conditions, the Defendant runs a high risk of serious illness or death if he contracts COVID-19.  People in their sixties are in general at a higher risk for serious illness than younger adults.  www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html (last accessed December 4, 2020). The Defendant's COPD and Type 2 diabetes place him at an increased risk of severe illness from the virus.  www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed December 4, 2020. The Defendant's hypertension might place him at an increased risk.  *Id*.

    The situation at Talladega FCI does not appear to be serious though perhaps not as dire as it once was, with 36 inmates and 25 staff members who are currently positive and 144 inmates and 9 staff members having recovered.  Out of 900 inmates, approximately 20% have tested positive for COVID-19 at some point while 4% are currently positive.  Accordingly, Talladega has apparently had a major outbreak and continues to have a significant number of cases relative to the inmate population.

    The Defendant states that as a BOP inmate, it is impossible for him to follow the CDC's recommendations to protect himself from exposure to this highly transmissible disease.  He contends the risk of serious illness or death from a global pandemic, along with the other relevant factors, presents an extraordinary and compelling basis for a sentence reduction.  Under *Pepper v. United States*, 562 U.S.

476, 490-93 (2011), the Court must also consider post-offense developments under 18 U.S.C. § 3553(a).

There is no question that the Defendant's age and health conditions place him at a higher risk of serious illness or death than many other inmates. The Defendant claims that, while the circumstances of the present offense qualified him for the lengthy sentence imposed in 2001, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness.

The Government claims that the motion should be denied in order to protect the community. The Defendant was placed in the Florida Division of Youth Services in 1975 at the age of 14 after he was charged with breaking and entering. The Defendant's history of violent adult convictions include robbery of a Taco John's restaurant, while armed with a weapon which he represented to be real. The Defendant was convicted of robbery of another Taco John's while threatening the imminent use of force. The Defendant has a third robbery conviction wherein he demanded money from a female employee's cash register "or he would blow her 'fucking face off.'" The Defendant also has a conviction for unlawful delivery of LSD. Moreover, he has a burglary conviction along with two DUI convictions. Subsequently, the Defendant was convicted of three counts of armed robbery and sentenced to 15 years in the Illinois Department of Corrections. The Defendant also has previous federal convictions for conspiracy to commit armed robbery and armed

robbery of a pharmacy, wherein he was sentenced to 30 years in the BOP. Then came the three convictions in this case.

The Defendant reported having substance abuse problems since his teenage years, beginning with marijuana and later using LSD, speed, cocaine and heroin. The Defendant has also been diagnosed with "anti-social personality" with "violent temper outbursts."

In terms of post-sentencing developments, the Defendant's motion states he has been an excellent inmate. He has developed marketable work skills in UNICOR where he has been complimented by his supervisors. He was recently assessed by BOP as a "low risk" to re-offend. He has only had three discipline reports during his entire term of incarceration, only one of which was in the last 15 years. The Defendant is a certified International Organization of Standardization auditor and has been a quality assurance inspector with UNICOR for 16 years in the following areas: textile, automotive restoration, fleet restoration, graphic arts printing, finishing (paint, powder and liquid) and office furniture and components. His UNICOR supervisors have stated "they would like to have more workers like Mr. Maisenbacher." He is also a trained industrial millwright mechanic, press-brake operator and punch and drill press operator. He also has food service experience. Additionally, the Defendant has completed his GED and 46 supplemental educational courses.

The Defendant is also a skilled artisan who makes hand-crafted jewelry using precious stones such as amethyst, garnets, lapis lazuli, tiger eye and pearls, among others. The motion reports that Defendant's cousin, Edna Dixon, sells similar jewelry items and will assist the Defendant to market and distribute the goods. The Court has received a letter from Ms. Dixon.

The Defendant contends that the sentence he has already served is "sufficient, but not greater than necessary," to serve the purposes of sentencing under § 3553(a). Alternatively, the sentencing purposes could also be served by an order of home confinement as a condition of supervised release.

(C)

While the Defendant's health conditions and the pandemic arguably present extraordinary and compelling circumstances, the Court is unable to conclude that compassionate release is warranted upon considering the applicable sentencing factors. The Defendant's extensive criminal history is difficult to comprehend given that he has been incarcerated for more than 20 years. Based on that history of serious felonies, sentencing factors such as deterrence and protection of the public warrant denying the Defendant's motion.

The Court recognizes that Defendant appears to have made significant progress during his current prison term and commends him for doing so. He has certainly improved his chance to succeed upon his release. Moreover, given that the

likelihood of recidivism diminishes with age, the Defendant certainly is less likely to commit a serious crime at 60 than he was at 40. However, the Court cannot overlook the Defendant's lengthy history of serious violent crimes. Upon considering the most applicable statutory sentencing factors, the Court concludes that compassionate release is not appropriate as to the Defendant.

Ergo, the Emergency Motion of Defendant Steven Wayne Maisenbacher for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [d/e 67] is DENIED.

ENTER: December 11, 2020

    FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge